IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

```
CRAIG BARROW, III,           *
                             *
      Plaintiff,             *
                             *
v.                           *      CV 414-251
                             *
FEDERAL EMERGENCY            *
MANAGEMENT AGENCY,           *
                             *
      Defendant.             *
```

**ORDER**

Now before the Court is Defendant Federal Emergency Management Agency's ("FEMA") motion to dismiss for lack of subject matter jurisdiction. (Doc. 15.) For the reasons set forth below, the Court **DENIES** FEMA's motion.

**I. BACKGROUND**

Plaintiff brought this suit challenging FEMA's final flood hazard determination for property in the City of Guyton in Effingham County, Georgia. (Am. Compl., Doc. 14, ¶ 1.)

**A. Statutory Background**

Under the National Flood Insurance Act ("the Act"), FEMA creates and maintains Flood Insurance Rate Maps ("FIRMs") of any area that is subject to naturally occurring floods. 42 U.S.C. §§ 4014(f), 4101(g). FEMA determines base flood elevations to create these maps. See 44 C.F.R. § 59.1 (defining "flood

1

elevation determination"). FEMA also periodically re-evaluates FIRMs to determine whether conditions have changed and to accurately revise flood hazard information. 42 U.S.C. §§ 4101(e).

The Act provides a process for appeal by affected communities and owners/lessees of real property within the community who believe that their property rights may be adversely impacted by the proposed base flood elevation determinations. See 42 U.S.C. § 4104. Before a preliminary FIRM becomes final and legally effective, the Act requires FEMA to (1) publish for comment the proposed base flood elevations in the Federal Register, (2) directly notify the community's chief executive officer, and (3) publish notification at least twice in a prominent local newspaper. Id. § 4104(a) & (b). The newspaper notices must be published within ten days of each other. Id. § 4104(b). The second newspaper publication initiates a 90-day appeal period. Id.

The sole basis for appealing the proposed base flood elevations is "the possession of knowledge and information indicating that (1) the elevations being proposed by the Director with respect to an identified area having special flood hazards are scientifically or technically incorrect, or (2) the designation of an identified special flood hazard area is

scientifically or technically incorrect." Id.; see also 44 C.F.R. § 67.6(a).

The Act also allows judicial review of FEMA's final determination resolving an administrative appeal. 44 U.S.C. § 4104(g). "Any appellant aggrieved by any final determination of the Administrator upon administrative appeal . . . may appeal such determination to the United States district court for the district within which the community is located not more than sixty days after receipt of notice of such determination." Id. The Administrative Procedure Act, 5 U.S.C. §§ 701-706, governs the Court's scope of review. Id.

### B. Factual Background

Plaintiff owns property bordered by the Ogeechee River and Riverside Drive in Effingham County, Georgia. (Am. Compl. ¶ 5.) On April 8, 2013, FEMA published a Federal Register notice of proposed Flood Hazard Area boundaries on the FIRM for parts of the City of Guyton and Effingham County. (Id. ¶¶ 17-18; Pl.'s Resp., Doc. 17, Ex. 3.) FEMA notified the City of Guyton and Effingham County of its proposed flood hazard determinations on May 7, 2013, and subsequently published the requisite public notices, with the second appearing in the Effingham Herald on May 21, 2013. (Laura Algeo Decl., Doc. 15, Ex. 2 ¶ 6.) The May 21, 2013 newspaper publication triggered the 90-day appeal period, ending August 19, 2013. (Id.)

3

Plaintiff's appeal arose out of the City of Guyton's proposal to spread treated wastewater on property located directly across the road from Plaintiff's property. (Am. Compl. ¶ 10.) Parts of the relevant City property were not included in the Zone A Special Flood Hazard Area on FEMA's proposed FIRM. (Id. ¶ 11.) Plaintiff believes that if FEMA included those parts of the City's property in the Special Flood Hazard Area, then it is unlikely Georgia's Environmental Protection Division would allow the City to spread treated wastewater there. (Id. 13.)

Accordingly, on July 8, 2013, Plaintiff submitted his appeal to FEMA through counsel.[1] (Doc. 17, Ex. 4.) The appeal included comments and map revisions requesting that the Zone A Special Flood Hazard Area boundary on the preliminary FIRM be expanded based on previous observations of flooding in two specific locations — "Longitude -81.480775/Latitude 32.355650" and "Longitude -81.479339/Latitude 32.356586" — and data published by the U.S. Geological Survey regarding historical stream flow and flooding for the Ogeechee River. (Id.) Plaintiff's comments also included a map that identified an "Area of Interest" for which he sought to increase a portion of

---

[1] As FEMA points out, the Act requires private individuals to submit appeals to their local government, 42 U.S.C. § 4104(c), but Plaintiff submitted his appeal directly to FEMA. (Doc. 17, Ex. 4.)

4

the Special Flood Hazard Area, defined by a red dotted line. (Doc. 17, Ex. 5.)

On July 23, 2013, FEMA sent a letter to Mayor Michael Garvin acknowledging the receipt of Plaintiff's request for reconsideration of the preliminary FIRM. (Doc. 17, Ex. 6.) The letter stated that "FEMA is considering the request an appeal because it satisfied the data requirements defined in Title 44, Chapter I, Part 67 of the Code of Federal Regulations and it was submitted during the 90-day appeal period." (Id.)

On September 24, 2013, FEMA responded substantively to Plaintiff's appeal, stating that the historical data submitted by Plaintiff did not support a conclusion that the 1993 and 1998 flooding at the two locations identified were caused directly by the Ogeechee River. (Algeo Decl. ¶ 8.) The letter explained that a hydrologic and hydraulic study of the area would be needed to support any change in the Special Flood Hazard Area and asked Plaintiff to provide one within 30 days, noting FEMA would consider the appeal resolved unless it received such study. (Id.)

On October 13, 2013, Campbell Civil Consulting ("Campbell"), retained by Plaintiff, submitted a preliminary hydrologic and hydraulic study based on vegetative density at two cross sections along the Ogeechee River identified as "84000" and "77620.83." (Id. ¶ 9.) On November 6, 2013,

Campbell submitted a final version of its hydrologic and hydraulic analysis proposing, on the basis of new Manning's roughness coefficients,[2] new flood elevations at *three* cross sections along the river: "84000," "90110.53," and "96004.19." (Id. ¶ 10.)

On December 4, 2013, FEMA sent a letter to Plaintiff, Campbell, and city and county officials identifying an error in Campbell's analysis and asked for a recalculation of the model's conclusions. (Id. ¶ 11.) Campbell revised the calculations on December 26, 2013. (Id. ¶ 12.) On January 8, 2014, Campbell provided the underlying model per the Environmental Protection Division's request and noted that "the only changes we're recommending to the model are roughness changes through three sections." (Id.)

On February 29, 2014, FEMA sent its first appeal resolution letter to city and county officials and Plaintiff (1) explaining that FEMA had revised elevations at the three cross sections based on Campbell's recalculated values and (2) giving the parties 30 days to review the revised preliminary FIRM and submit any comments on the revision before it issued its final

---

[2] The Manning's roughness coefficient is one of the factors used in predicting flood elevations and Flood Hazard Areas. (Am. Compl. ¶ 29.) The Manning's coefficient represents the resistance to flood flows in channels and floodplains. (Id.) Dense vegetation in a floodplain slows down and backs up the water so flood elevations are higher. (Id. ¶ 30.) To account for vegetation when calculating flood elevations and Flood Hazard Areas, flood models use a higher Manning's roughness coefficient for more densely vegetated floodplains. (Id. ¶ 31.)

6

determination. (Id. ¶ 13.) On March 17, 2014, the City of Guyton sent FEMA a letter identifying another mathematical error in Campbell's calculation of the Manning's roughness coefficient that resulted in inaccurate flood elevations for the three cross sections. (Id. ¶ 14.)

In response, on April 17, 2014, Campbell notified FEMA that "the Manning's Roughness error previously identified by [Campbell], and now corroborated by AMEC,[3] is also experienced at other sections of the Ogeechee in the effective model." (Doc. 17, Ex. 7.) Campbell's letter also stated that "[g]iven the sensitive flood history of the Ogeechee River, [Campbell] feels it would be irresponsible to continue using the 0.07 Manning's roughness coefficient *in any section in the river*, on either bank, without presenting clear engineering justification for doing so, vetted by peer review." (Id. (emphasis added).) Campbell recommended that FEMA utilize a Manning's roughness coefficient of 0.14 for all portions of all sections of the river that are as vegetated as the three cross sections studied by them. (Id.)

On May 23, 2014, FEMA sent a second appeal resolution letter to the parties explaining that FEMA evaluated the analysis provided by the City of Guyton, corrected the Manning's

---

[3] AMEC Environment & Infrastructure Inc. is an engineering consulting company hired by the City of Guyton to review FEMA's and Campbell's proposed flood models. (Doc. 17, Ex. 7; Algeo Decl. ¶ 14.)

7

coefficient for the three cross sections of the Campbell model accordingly, and made the appropriate revisions to the flood elevations for the three cross sections and the preliminary FIRM. (Doc. 17, Ex. 8.) The letter stated, "[p]lease review the revised preliminary portions of the FIS[4] report and FIRM to verify that the updated flood hazard data for this appeal resolution has been satisfactorily incorporated, where appropriate. Please submit your comments within 30 days of the date of this letter." (Id.)

On June 20, 2014, Plaintiff, through counsel, and Peoples & Quigley, Inc., Consulting Engineers submitted comments to FEMA. (Doc. 17, Exs. 9-19.) Echoing Campbell's April 17, 2014 recommendation that a higher Manning's roughness coefficient should be applied to *all* similarly vegetated sections of the river (Doc. 17, Ex. 7), Plaintiff's comments included five additional cross sections — "73750.22," "66000.00," "60000.00," "54000.00," and "50501.77" — located downstream of the three previously studied cross sections for which the Manning's roughness coefficient should be adjusted from 0.07 to 0.14. (Doc. 17, Ex. 10.)

On September 16, 2014, FEMA issued a letter of final flood determination with revised FIRMs, including adjustments to the Special Flood Hazard Area, based upon revised Manning's

---

[4] An "FIS" report is a Flood Insurance Study.

8

roughness coefficients to the three river stations identified by Plaintiff in November 2013: "90110.53," "84000.00," and "77620.83." (Doc. 17, Ex. 18.) FEMA contends that the information submitted by Plaintiff on June 20, 2014 "was outside the scope of [his] administrative appeal" and therefore, FEMA "did not attempt to analyze the study and revise the FIRM on its basis." (Algeo Decl. ¶ 16.) Thus, on November 17, 2014, Plaintiff brought this action alleging FEMA's final flood hazard determination was arbitrary and capricious because it was based on a clear error of fact in that not all relevant factors were considered.

## II. **MOTION TO DISMISS STANDARD**

An action may proceed in federal court only if subject matter jurisdiction exists. Bochese v. Town of Ponce Inlet, 405 F.3d 964, 974-75 (11th Cir. 2005). Federal Rule of Civil Procedure 12(b)(1) permits litigants to move for dismissal when the court lacks jurisdiction over the subject matter of the dispute. FED. R. CIV. P. 12(b)(1). On a motion to dismiss for lack of subject matter jurisdiction, the burden remains on the plaintiff to show that the court's limited federal jurisdiction has been properly invoked. McNutt v. GMAC, 298 U.S. 178, 182-83 (1935); Sweet Pea Marine, Ltd. V. APJMarine, Inc., 411 F.3d 1242, 1248 n.2 (11th Cir. 2005).

Challenges to subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) can be either facial or factual. McElmurray v. Consol. Gov't of Augusta-Richmond Cnty., 501 F.3d 1244, 1251 (11th Cir. 2007). A facial attack on a complaint "require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990) (citation omitted and alteration in original). On the other hand, a factual attack "challenge[s] the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." Id. (citation omitted).

Here, Defendant makes a factual attack. FEMA asserts the Court lacks subject matter jurisdiction because Plaintiff seeks to force FEMA's consideration of technical information submitted outside the scope of the 90-day appeal period permitted by the Act, and therefore, Plaintiff has not met the prerequisite that triggers the limited waiver of sovereign immunity. "On a factual attack of subject matter jurisdiction, a court's power to make findings of facts and to weigh the evidence depends on whether the factual attack on jurisdiction also implicates the merits of plaintiff's cause of action." Garcia v. Copenhaver,

Bell & Assocs., M.D.'s, P.A., 104 F.3d 1256, 1261 (11th Cir. 1997). When the facts related to jurisdiction do not implicate the merits of the plaintiff's legal claim, then "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Id. (citing Lawrence, 919 F.2d at 1529). But when the facts related to jurisdiction do implicate the merits, then "[t]he proper course of action for the district court . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case[.]" Id. (citing Williamson v. Tucker, 645 F.2d 404, 415-16 (5th Cir. 1981)[5]).

The Court finds that the question of whether Plaintiff complied with the administrative filing deadline implicates only the procedural aspects of 42 U.S.C. § 4014, not the merits of his claim. Thus, the Court will review and weigh the evidence presented to determine whether subject matter jurisdiction over the challenged claim has been established. Accordingly, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Lawrence, 919 F.2d at 1529 (quoting Williamson, 645 F.2d at 412-13). Again, Plaintiff bears the

---

[5] Decisions of the Court of Appeals for the Fifth Circuit that were announced prior to October 1, 1981, are binding precedent in the Eleventh Circuit. Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981).

11

burden of establishing that jurisdiction exists in the face of FEMA's factual challenge to subject matter jurisdiction. OSI, Inc. v. United States, 285 F.3d 947, 951 (11th Cir. 2002).

### III. **DISCUSSION**

FEMA argues the Court lacks subject matter jurisdiction over this action because Plaintiff failed to meet the administrative filing deadline that would trigger the waiver of sovereign immunity. Specifically, FEMA asserts that Plaintiff failed to exhaust his administrative remedies because he did not submit technical information for the five additional river locations, first presented in June 2014, as part of the technical analysis requested by FEMA to resolve Plaintiff's original appeal. (Def.'s Br., Doc. 15-1, at 11-12; Def.'s Reply, Doc. 21, at 4.)

The United States government may not be sued without its consent, and this immunity extends to federal government agencies. Rodriguez v. United States, 415 F. App'x 143, 145 (11th Cir. 2011) (citing Asociacion de Empleados del Area Canalera (ASEDAC) v. Panama Canal Comm'n, 453 F.3d 1309, 1315 (11th Cir. 2006)). The National Flood Insurance Act provides two limited waivers of immunity. First, the Act waives sovereign immunity for challenges to FEMA's disallowance of all or part of a flood insurance claim. 42 U.S.C. § 4072. Second, as is relevant here, 42 U.S.C § 4104(g) provides that "any

appellant aggrieved by any final determination of the Director *upon administrative appeal,* . . . may appeal such determination to the United States district court for the district within which the community is located not more than sixty days after receipt of notice of such determination." Id. (emphasis added).

If a plaintiff fails to comply with the statutory requirements of § 4104, the district court lacks subject matter jurisdiction and the case must be dismissed. McCrory v. Adm'r of Fed. Emergency Mgmt. Agency of U.S. Dep't of Homeland Sec., 22 F. Supp. 3d 279, 288 (S.D.N.Y. 2014)(finding that the court lacked jurisdiction on account of the plaintiff's failure to exhaust her administrative remedies, as the materials submitted in connection with her appeal did not include certifications by licensed engineers or land surveyors), aff'd sub nom., No. 14-2559, 2015 WL 1922391 (2d Cir. Apr. 29, 2015); Cnty. of Madison, Ill. v. Fed. Emergency Mgmt. Agency, No. 10-CV-919-JPG-DGW, 2011 WL 3290177, at *3 (S.D. Ill. Aug. 1, 2011)(holding that the court lacked jurisdiction because FEMA never issued a final determination); Great Rivers Habitat Alliance v. Fed. Emergency Mgmt. Agency, No. 4:08-CV-1982-DDN, 2009 WL 2208483, at *5 (E.D. Mo. July 23, 2009), aff'd, 615 F.3d 985 (8th Cir. 2010)(affirming the lower court's holding that it lacked jurisdiction because the plaintiffs did not submit *new* scientific or technical information, and what they did submit

was not certified by an engineer or surveyor); City of Biloxi, Miss. v. Giuffrida, 608 F. Supp. 927, 931 (S.D. Miss. 1985)(holding that the court lacked jurisdiction because the city appealed outside the 60-day window after notice of FEMA's final decision and the appeal was not based on scientific or technical error); City of Trenton v. Fed. Emergency Mgmt. Agency, 545 F. Supp. 13, 17 (E.D. Mich. 1981)(holding that the court lacked jurisdiction because the city's appeal was made to the court more than 60 days after notice of FEMA's final decision); but see Douglas Cnty. v. U.S. Dep't of Homeland Sec., No. 3:09-CV-00544-RCJ-RAM, 2010 WL 2521042, at *5 (D. Nev. June 9, 2010) (holding it is within the district court's jurisdiction to review a decision to deem an administrative appeal untimely in the absence of specific language in the statute conditioning jurisdiction on a timely appeal to FEMA), reconsideration granted on other grounds sub nom., Douglas Cnty. v. Fed. Emergency Mgmt. Agency, No. 3:09-CV-00544-RCJ, 2011 WL 996755 (D. Nev. Mar. 16, 2011). "Accordingly, Defendant's sovereign immunity and exhaustion arguments collapse into the same inquiry: whether Plaintiff satisfied the statutory and regulatory requirements in filing [his] administrative appeals with the agency."[6] McCrory, 22 F. Supp. 3d at 288.

---

[6] The Court notes that the Eleventh Circuit Court of Appeals recently held, in the context of habeas cases, that the requirement of exhaustion is non-jurisdictional. Santiago-Lugo v. Warden, 785 F.3d 467, 475 (11th Cir. 2015). In that case, the court emphasized that "Congress knows how to limit

Here, there is no issue as to whether Plaintiff submitted a timely administrative appeal. FEMA published the second public notice of the proposed FIRM in the Effingham Herald on May 21, 2013, triggering the 90-day appeal period from May 21, 2013 to August 19, 2013. (Algeo Decl. ¶ 6.) Plaintiff's administrative appeal, submitted on July 8, 2013, was filed within that 90-day window. (Doc. 14, Exs. 4-5.) FEMA notified Plaintiff that it would consider his letter an appeal and confirmed that Plaintiff's appeal "satisfied the data requirements defined in [44 C.F.R. § 67]." (Doc. 17, Ex. 6.) Neither party disputes that Plaintiff's administrative appeal implicated scientific or technical errors, as 42 U.S.C. § 4104(b) requires, or that the materials he submitted were properly certified by licensed engineers. Finally, neither party contests that Plaintiff filed the instant suit in a timely manner pursuant to 42 U.S.C. § 4104(g) — that is, within 60 days of his receipt of FEMA's

---

courts' subject matter jurisdiction . . . . The fact that it did not limit courts' subject matter jurisdiction to decide unexhausted § 2241 claims compels the conclusion that any failure of [Plaintiff] to exhaust administrative remedies is not jurisdictional." Id. In many respects, this case is distinguishable from Santiago-Lugo: Congress explicitly limited courts' subject matter jurisdiction by including the phrase "upon administrative appeal" in § 4104(g) of the National Flood Insurance Act. Indeed, "[t]he limitation on appeals was the product of more debate and testimony than any other portion of the Act when it was being considered in Congress. The decision by Congress to adopt such a limited scope of appeal was, therefore, not a hasty one, nor is it one which may be overlooked by the Court." City of Biloxi, Miss., 608 F. Supp. at 931 (quoting Reardon v. Krimm, 541 F. Supp. 187, 189 (D. Kan. 1982)). The Court nevertheless proceeds with caution, as did the Santiago-Lugo and Douglas courts, in grafting jurisdictional significance onto a regulation in the absence of unambiguous jurisdictional terms.

final determination notice.[7] On these facts, the Court retains jurisdiction of Plaintiff's claims under § 4014(g)'s limited wavier of sovereign immunity.

FEMA urges a different result based on two arguments: (1) notwithstanding its prior representation that Plaintiff's appeal met 44 C.F.R. § 67's "data requirements" (Doc. 17, Ex. 6), he actually did not meet all regulatory requirements, specifically Section 67.6, which requires an appellant to "provid[e] documentation of all locations where the appellant's base flood elevations are different from FEMA's" (Def.'s Br. at 12); and (2) Plaintiff's June 2014 submission of information regarding five *additional* cross sections that purportedly affect the flood elevation in Plaintiff's "Area of Interest" constitutes a "new appeal" — one that was submitted ten months after the close of the 90-day administrative appeal window (id. at 12-13; Doc. 15, ¶ 3).

Neither argument prevails. First, even if the Court ignores FEMA's conflicting written representation that Plaintiff satisfied "the data requirements" — whatever those may be — FEMA has provided no authority, and the Court finds none, that dictates an appellant must "provide documentation of" or identify *all* locations with differing flood elevations in the

---

[7] FEMA issued a letter of final flood hazard determination on September 16, 2014. (Am. Compl. ¶ 71.) Plaintiff filed the instant suit on November 17, 2014. (Doc. 1.)

16

first document he or she submits to initiate the appeal process. There are no time limits set forth anywhere in 44 C.F.R. § 67.6 — the regulation on which FEMA now relies — or in 44 C.F.R. § 67.8, which governs the procedure for appeals. The events of this case, in fact, tend to suggest that a requirement demanding such front-loaded precision does not exist: FEMA (1) construed Plaintiff's letter as a compliant appeal, though including only a map and two sets of coordinates (Doc. 17, Exs. 4-6); (2) informed him that "[if] additional data or information are required," he would be contacted (Id., Ex. 6); (3) subsequently accepted for review a hydrologic/hydraulic study based on two specific cross sections of the river; and (4) even later, accepted for review a finalized study that focused on three specific cross sections. Such conduct is not consistent with FEMA's argument that 44 C.F.R. § 67.6 must be interpreted strictly, from the perspective of the agency at the point of its receipt of a complete appeal.

Second, FEMA also has not presented any legal authority to support its construction of Plaintiff's June 2014 submission as a "new appeal." Nor has it presented any authority to support its contention that all scientific and technical data must be submitted within the 90-day administrative appeal window.[8] No

---

[8] As the facts of this case show, FEMA did not substantively respond to Plaintiff's appeal and request supporting data until well over a month after the 90-day appeal window closed.

17

such language appears in the relevant sections of the Act or the relevant corresponding regulations.[9] Rather, after FEMA receives a timely appeal, it *must* "review and take fully into account *any technical or scientific data submitted by the community* that tend to negate or contradict the information upon which [the] proposed determination is based." 42 U.S.C. § 4104(e); see also 44 C.F.R. § 66.5(c) ("Submission of information from the community concerning the study shall be encouraged."). As Plaintiff points out, it then evaluates the conflicts at hand in comprehensive consultation with the appellants. (Pl.'s Resp. at 15.) 42 U.S.C. § 4104(e); see also City of Biloxi, 608 F. Supp. at 930. Consequently, FEMA must only reach a final determination within a *reasonable* time. 42 U.S.C. § 4104(e)(emphasis added). "Th[is] statutory framework clearly evinces an attempt to encourage FEMA to work with local communities in good faith," a goal "not aided by rigid adherence to time limits."[10] Douglas Cnty., 2010 WL 2521042, at *5.

---

[9] By comparison, if FEMA elected to resolve Plaintiff's appeal via administrative hearing, 44 C.F.R. § 68.8 expressly limits the scope of review to "[a]n examination of any information presented by each appellant within the 90 day appeal period."

[10] This is not to say, however, that perpetual amendment or expansion of appeals is permitted. "If a community could come forth with piecemeal objections to an [Flood Insurance Study] over an extended period of time, FEMA could never implement a final rate map, and the Congressional policy underlying the [Flood Insurance] Program would be thwarted. Indeed, Congress undoubtedly foresaw this problem when it deliberately limited appeals in order to avoid the pitfall of permitting those unnecessary delays and self-interested procrastinations which would make the flood insurance program unworkable." City of Brunswick, Ga. v. United States, 849 F.2d 501, 505-06

18

At bottom, the issue in this case, objectively framed, surrounds the scope of Plaintiff's timely, well-supported administrative appeal and FEMA's decision to deem certain data irrelevant or untimely, not whether Plaintiff exhausted his administrative remedies so as to trigger the Act's waiver of sovereign immunity. FEMA's compliance with administrative procedure when it elected to exclude from consideration Plaintiff's June 2014 submission is precisely the type of decision for which this Court's review is appropriate.

Simply, at this stage, the Court is unwilling to attach jurisdictional significance to a single word — "all" — within a single regulation — 44 C.F.R. § 67.6(b) — of the Federal Register in the absence of any on-point mandatory or persuasive authority, and it is unpersuaded by FEMA's insistence on compliance to the letter as a condition of exhaustion when neither party did so at almost every step. Consequently, the Court **DENIES** FEMA's Motion to Dismiss. (Doc. 15.)

**ORDER ENTERED** at Augusta, Georgia, this 9th day of July, 2015.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

(11th Cir. 1988) (citing City of Brunswick v. United States, No. 285-142, slip op. at 10 (S.D. Ga. Jan. 9, 1986)(citation omitted)).